[Civ. No. 9345. First Appellate District, Division Two.—February 27, 1934.]

ANTHONY L. ROGELMAIR et al., Respondents, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Erwin P. Werner and Ray L. Chesebro, City Attorneys, Frederick von Schrader, Assistant City Attorney, and D. M. Kitzmiller, Deputy City Attorney, for Appellants.

William Dellamore and James F. Kelly for Respondents.

SPENCE, J.—Plaintiffs, as owners of a piece ·of real property bordering upon Griffith Park in the City of Los Angeles, claimed an easement for ingress and egress to and from said property over a strip of land situated within said park. They brought this action to enjoin the defendants from constructing a fence along the boundary line of said park upon the portion thereof over which plaintiffs claimed such easement. Judgment was entered in favor of plaintiffs and from said judgment defendants appeal.

It is extremely difficult to give a detailed description of plaintiffs' land and the courses of the roads now and heretofore leading into Griffith Park to the north of said property. Several maps were introduced in evidence for this purpose. We believe, however, that despite the irregular shape of Griffith Park, the irregular shape of plaintiffs' land and the irregular courses of said roads, a rough description may be given which will suffice for the purposes of this appeal.

Plaintiffs' lot consists of a long, wedge-shaped piece running in a general northerly-southerly direction, said lot being narrower at the northerly end than at the southerly end. It is contiguous to the easterly boundary line of said park. It was formerly a part of a larger tract of land, which larger tract was bounded on the west by said park and on the north by what was formerly known as Tropico Avenue. Said larger tract was then unsubdivided. Said Tropico Avenue was then a 40-foot road which ran up to a point near the easterly boundary line of said park and then

turned in a southwesterly direction into the park and shortly thereafter crossed a bridge over a flood control channel. In 1909 said road was widened to 60 feet. Its name was then changed to Los Feliz Boulevard. In 1922 plaintiffs' predecessor in interest, who was the original subdivider of the large tract, placed on record a tract map and dedicated to public use an additional 20-foot strip on the south side of Los Feliz Boulevard, which strip curved slightly to the southwest as it approached the easterly boundary line of Griffith Park. Thereafter Los Feliz Boulevard was improved up to said boundary line as a 100-foot road. With the dedication and improvement of said boulevard as widened to 100 feet, plaintiffs' lot for the first time became contiguous to a road. The narrow blunt northerly end of plaintiffs' wedge-shaped lot then had a curved frontage of approximately 46 feet along the property line on Los Feliz Boulevard. Thereafter, the course of the road through the park was altered slightly to the north in order to connect with a new bridge over the flood control channel, which new bridge was slightly to the north of the old bridge. But despite this change, the maps show that plaintiffs had ample means of ingress and egress to and from their property over land dedicated for use as a public street outside of the park boundary. There is no evidence to show that there was ever a road within the park contiguous to the westerly boundary line of plaintiffs' property and from plaintiffs' own exhibits it appears that the roads above mentioned merely crossed the easterly boundary line of the park and continued into the park in a southwesterly direction without touching plaintiffs' land at any point after so crossing. If the course of the road within the park had not been altered to the north so as to run over the new bridge, said road within the park would have been closer to plaintiffs' westerly property line than the present road but it would not have been contiguous to the westerly property line thereof. The practical reason for plaintiffs' desire to obtain an easement over the park property and to enjoin the defendants from building a fence upon the boundary line of said park property may be easily understood. As above stated, plaintiffs have a curved frontage on Los Feliz Boulevard of about 46 feet at the property line. If plaintiffs' easterly and westerly lines are extended, they converge and form the point of the wedge near the

center of Los Feliz Boulevard. Plaintiffs may therefore be said to have a smaller frontage at the curb line than at the property line. It is plaintiffs' desire to have a frontage at the curb line on the road as it extends into the park equal to the amount of frontage which they have at the property line. The result of the trial court's judgment was to award to plaintiffs a private easement over what we may term an inverted wedge-shaped strip of park property, the point of said wedge being at the place where the boundary line of the park is intersected by the northerly property line of plaintiffs' land. An easement over this strip would give plaintiffs access to the present road within the park boundary over park property not otherwise used for road purposes.

█ Appellants make several points in support of their contention that the judgment should be reversed. They argue that under the charter of the City of Los Angeles and under the grant by which said city acquired Griffith Park, appellants were without power to grant a private easement over any portion of said park. They further argue that such an easement over public park property could not result from the use of the property. There appears to be merit in these contentions but we refrain from discussing them because a reversal is required upon other grounds urged by appellants. Even if we assume that such easement could have been acquired by grant, there was no evidence of any grant of any kind and even if we assume that such easement could have been acquired by use, there was no evidence whatever of any use of the strip in question. In the absence of such evidence we are unable to determine either the theory upon which respondents asserted their claim or the theory upon which the trial court based its judgment. Respondents' brief throws little if any light upon the subject. We may pause to state that the only heading found in said brief is the heading "Statement of Facts". No attempt has been made to comply with section 2 of Rule VIII of the Rules for the Supreme Court and District Courts of Appeal, which requires that the brief "must present each point separately under an appropriate heading, showing the nature of the question to be presented or the point to be made". After reading said brief we are still at a loss to know the theory upon which respondents

rely to support the judgment. We do not find any fact or facts mentioned therein to support respondents' claim to such easement nor do we find a single authority cited.

Respondents state that the trial court granted the injunction "after having viewed the property and ascertaining the facts, which could only be had by the examination of the conditions prevailing at the site, where it was readily seen that if the defendants' and appellants' threatened acts were not enjoined, that plaintiffs' and respondents' property would be practically destroyed". But respondents do not suggest any material fact that could have been ascertained only by an inspection of the property and could not have been ascertained from the maps and photographs in evidence. It can be readily seen from said maps and photographs that respondents' property would probably be more desirable if they had such an easement and if appellants were enjoined from building a fence along the park boundary line. The occupants of respondents' property would then have a better view of the park and the roadway therein as well as a more convenient means of ingress and egress. But mere considerations of desirability and convenience from the standpoint of the adjoining land owners certainly cannot be made the basis for a decree granting a private easement over public property or for a decree enjoining the erection of a fence along the park boundary line.

While respondents do not claim a right of way of necessity over the strip in question, we are in accord with appellants' contention that any such claim would necessarily fall. This is true, first, because the undisputed facts showed that no necessity existed as respondents had a means of ingress and egress to and from Los Feliz Boulevard outside of the park boundary line and, second, because if such necessity existed, the right of way of necessity which would have been created by operation of law would have been a way running over the remaining land of respondents' grantor and not a way running over other land located within a public park. (*Mesmer* v. *Uharriet*, 174 Cal. 110 [162 Pac. 104]; *Bully Hill Min. etc. Co.* v. *Bruson*, 4 Cal. App. 180 [87 Pac. 237]; 9 Cal. Jur. 967, sec. 17.)

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.